The plaintiff recovered two thousand dollars damages, in an action for a libel published in the German newspaper, "The New Yorker Demokrat." The translation of the article, given in evidence on the trial, charged the plaintiff with having "made himself invisible on account of too much borrowing and not paying; that is to say, ran away; and depositing money under another name in the bank, whereby the creditors were paid." Another part of the publication called upon the plaintiff *Page 549 
to return the bakery utensils which it alleged he had taken away from the defendant, "in default whereof (the article stated), I shall prosecute him in court as a thief." A nota bene, appended to the piece, was as follows: "It is a fine thing if a man can pass any where and show, if demanded, his bare back, but there are people who dare not very well show it, because there would be found the Swiss gallows upon it." The answer admitted the publication, and set up that the plaintiff had taken and carried away from the defendant certain bakery utensils; that he had obtained several barrels of flour on the credit of the defendant, and appropriated them to his own use, without having any authority from the defendant for doing so. The last clause of the answer is, "The defendant further answering says, it is true that said plaintiff made himself invisible on account of too much borrowing and not paying; that is, ran away." On the trial, in the superior court of the city of New York, one Feliz Brockman, a witness for the plaintiff, swore that he was from Switzerland; that he had been in New York six years, and mingled much with the Germans. He said that the term "Swiss gallows" had a commonly understood meaning among Germans. The plaintiff's counsel inquired what is the meaning of the phrase, as commonly understood among Germans? The defendant's counsel objected to the question, on the ground that the sentence showed on its face what it meant. The judge overruled the objection, and the witness answered: "If a man who murders or steals, or such things, gets less than being hanged, they mark him with a hot iron in the form of a gallows, in Switzerland." The defendant's counsel objected to the answer, on the ground that the plaintiff must prove the law of Switzerland, and that the law of that country could not be proved by such evidence. The court overruled the objection to the admissibility of the answer, but stated that it was not received as evidence of the law; and that it would not be regarded as any evidence *Page 550 
of the law of Switzerland. The defendant's counsel excepted to the ruling.
These exceptions were not well taken. The phrase does not show, on its face, what was meant. No one, without a knowledge of the popular understanding of German, would attach any particular sense to the words; but, as explained by the witness, they did convey a most offensive and reproachful meaning. A German witness had, before the question arose, testified that they had not a fixed meaning in the language, so far as he knew. It was certainly competent to show that they referred to a supposed usage as to the punishment of convicts of a certain class. Then as to the other of these exceptions. Taking the question and answer together, the testimony was that the phrase, as commonly understood among Germans, alluded to a real or supposed law or practice of the kind mentioned, as prevailing in Switzerland. Such was the understanding of the judge, which he openly stated to the jury, the parties and counsel, and I think it was warranted by the connection in which the answer was given. If this were not its true sense, or what the witness intended, the defendant's counsel might have readily shown it by cross-examination. If it had been an attempt to prove a part of the criminal law of Switzerland, it may be that the witness would not have been competent to speak on the subject. The testimony shows it to have been one of those allusive expressions, in which libelous imputations can easily be conveyed, and which require explanation to disclose their force and purport. The position that it was necessary to prove the Swiss law, was not well taken. It was not material whether there was really such a law there or not. It was enough that there was a popular understanding that the treatment of certain criminals was to brand them in the manner referred to.
The inuendo used to point the meaning of the expression in the publication ending, "that is to say, ran away," is *Page 551 
that it meant to charge that the plaintiff had borrowed articles of property and then ran away and absconded without paying for or returning the same. The answer sets up, in a general way, without any specification of particulars, a justification to this part of the charge. On the trial the defendant called Mr. William H. Falls, and put to him this question: "Did the plaintiff run away owing you anything?" The court excluded the inquiry on the plaintiff's objection, and there was an exception. The fact of owing a debt is not the charge imputed or sought to be justified; nor is the fact of absconding on account of a common indebtedness. It imputes a more censurable breach of faith, the fact of borrowing and running away to avoid payment. It is, moreover, connected in the publication with the charge of an ability to pay, and the practicing a subterfuge to avoid it, namely, the depositing his money in a bank under another name, which money was afterwards discovered and obtained by his creditors. The mere fact of absconding, being indebted, did not meet the charge, and was not a justification. We are referred to the 165th section of the code, and the case of Bush v.Brosser (1 Ker. 347), and Bisbey v. Shaw (2 Ker. 67.) These authorities raise a point of some difficulty in this case. They have produced a considerable change in the law, and we are to determine whether the ruling excepted to on this point is hostile to the new rule as established by the code and settled by these cases. The present doctrine is this: The defendant may set up a justification, or he may allege facts short of a full justification, but giving some color to the charge, by way of modification, or he may do both; and in either case he may prove the facts as they are, though they fall short of a justification; and the jury may take them into consideration for the purpose of mitigating the damages. In this case nothing was alleged specifically, by way of mitigation, but there was an attempt to plead a justification. But the pleading in this respect was altogether *Page 552 
insufficient for want of particularity. The statement contained in the answer, "that it is true that the plaintiff made himself invisible on account of too much borrowing and not paying — that is, ran away" — is as general as the libel, and apprises the plaintiff of nothing. The objection on the ground of surprise is just as strong as a notice served stating that the defendant would justify the truth of the libel would have been. Mr. Chitty states the rule very accurately in saying that the defendant, in this class of actions, must justify by stating the particular facts which evince the truth of the imputation, and that the rule holds whether the imputation upon the plaintiff's character be of a general or specific nature. He adds that this is necessary, although the libel contain a general imputation upon the plaintiff's character, that the plea should state specific facts showing in what particular instance, and in what exact manner, he has misconducted himself. (1 Chitty on Pl. 494, 495.) I do not conceive that the substance of this rule is abolished by the code. In respect to new matter in an answer, the direction is only that it must be in ordinary and concise language, without repetition. This certainly does not allow a reiteration of the libelous words and an averment that they are true, without the statement of a single fact showing them to be so. Take, for instance, a charge that one is a thief or a murderer, or that he has committed perjury. A statement in the answer that the words are true would not be a justification, and it would fall just as far short of being a statement of facts to be proved by way of mitigation. It is a statement of nothing. It is simply a repetition of the libel. Such is the precise character of the answer in this case so far as it seeks to meet the imputation of borrowing and running away. It does not furnish the slightest clue to the case which the defendant intends to prove on the trial. The provision of the section of the code just referred to is that the answer (in slander or libel) may allege both the truth of the matter *Page 553 
charged as defamatory, and any mitigating circumstances. This certainly does not mean that it may be alleged in general terms, without any statement of facts or particular circumstances. The requirement that the answer should set up the matter to be relied on was intended to prevent surprise, by informing the plaintiff of what he must expect to meet.
The only doubt which I have had as to the effect of the allegation in the answer under consideration, has arisen from the provision of the code allowing the court to require a pleading, in certain cases, to be made more definite and certain by amendment. (§ 160.) No doubt the plaintiff might have resorted to a motion under this section. But I am of opinion that this consideration does not preclude a plaintiff, in such a case as this, from objecting to the evidence. Whether the evidence excluded tended to a defense or mitigation, the pleading under which it was to be received was prescribed by a special provision of the code, namely, that contained in section 165. If the defendant had not alleged the truth of the matter charged as defamatory, or any mitigating circumstances, according to the special intention of that provision, he was not entitled to give the evidence which was rejected. Considering, as I do, that the reiteration of the charge in the same general terms in which it was made is a nullity simply, I think the defendant has not fulfilled the condition on which alone he was permitted to give the evidence.
Several topics are discussed in the printed briefs, to which I have not alluded. They either relate to questions which were not made at the trial, or are pure matters of fact which have been settled by the jury. The only questions of law in the case are those arising upon the exceptions which I have examined.
I am in favor of affirmance.
All the judges concurring, judgment affirmed. *Page 554